## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

_____

JIM YOUNKIN,

                                   CAUSE NO. CV 05-48-M-DWM

                Plaintiff,

     vs.

THE PRUDENTIAL INSURANCE       FINDINGS AND RECOMMENDATION
COMPANY OF AMERICA, a New Jersey   OF U.S. MAGISTRATE JUDGE
Company, WASHINGTON CORPORATIONS,
a Montana Company, LONG TERM
DISABILITY COVERAGE FOR ALL
EMPLOYEES OF MONTANA RAIL LINK, INC.
AND I & M RAIL LINK, LLC, OF
WASHINGTON CORPORATIONS, and DOE
DEFENDANT I THROUGH IV,

                Defendants.

_____

    This matter comes before the Court on the Plaintiff's Motion
for Partial Summary Judgment on Count II of his Amended
Complaint.  His motion also seeks attorney's fees and costs
pursuant to 29 U.S.C. § 1132(g), and interest on the back-
payments of disability benefits he has received through this
lawsuit.

## I.   PROCEDURAL HISTORY

    The Plaintiff initiated this action pursuant to the Employee
Retirement Income Security Act (ERISA) to recover benefits and
statutory remedies as a participant in the Long Term Disability

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 1

Coverage for All Employees of Montana Rail Link, Inc. and I&M Rail Link, LLC of Washington Corporations (the Plan), an ERISA qualified plan.  He is a former locomotive engineer for Montana Rail Link (MRL), and he was injured in February 2002 while working for MRL.  Based on his injuries he applied for benefits under the Plan.  The Defendants initially awarded benefits to the Plaintiff, but subsequently terminated those benefits. Therefore, the Plaintiff filed this action to recover those terminated benefits.

The Plaintiff's Amended Complaint alleges two Counts of liability against the Defendants.  Count I alleges the Plaintiff is entitled to his disability benefits under the Plan.  Count II alleges Defendants Washington Corporations (Washington) and The Prudential Insurance Company of America (Prudential) are liable for statutory penalties for their failure to timely produce documents upon the Plaintiff's request as required under ERISA.

The parties have already resolved the Plaintiff's claim for benefits in Count I.  Prudential admitted that when it terminated the Plaintiff's benefits it did so by applying the incorrect Plan language from the 2001 Plan when it should have applied the 2002 Plan.  Therefore, the parties stipulated to remand the issue of the Plaintiff's eligibility for benefits to Prudential for further consideration under the proper Plan.  On March 3, 2006, Prudential paid benefits, without interest, for the period of

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 2

time from November 1, 2002, to August 19, 2005.  Then, pursuant

to provisions of the Plan, and based on the Plaintiff's claim for

further benefits, on June 21, 2006, Prudential awarded the

Plaintiff a continuation of his benefits.  Prudential paid such

benefits retroactively as of August 20, 2005, and those benefits

will continue into the future pending the Plaintiff's continued

eligibility.

With regard to Count II of the Amended Complaint, Prudential

previously moved for summary judgment contending it could not be

held liable for statutory penalties as alleged.  Prudential took

the position that such penalties could only be imposed against an

ERISA "plan administrator", and since Prudential is the "claims

administrator" it concluded it could not be held liable under 29

U.S.C. § 1132(c)(1) for any failure on its part to timely produce

Plan documents the Plaintiff requested.

The Court denied Prudential's summary judgment motion on

August 27, 2006.  In substance, the Court concluded that

liability for statutory penalties under 29 U.S.C. § 1132(c)(1)

can be imposed against any administrator, regardless of whether

the administrator is identified as a "claims" or a "plan"

administrator, and Prudential was not entitled to summary

judgment.

On June 30, 2006, the Plaintiff filed the instant motion to recover the statutory fees under 29 U.S.C. § 1132(c)(1).  That motion is the subject of this Recommendation.

## II.  APPLICABLE LAW - SUMMARY JUDGMENT

A party moving for summary judgment bears the burden of demonstrating "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A movant may satisfy that burden where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

## III. DISCUSSION

The Plaintiff moves for partial summary judgment on Count II of the Amended Complaint against Washington and Prudential. Plaintiff contends that each are subject to statutory penalties for their failure to timely provide the Plaintiff with copies of certain documents.  Additionally, having been successful on his claim for benefits alleged in Count I, the Plaintiff also seeks attorney's fees, costs, and interest against both Defendants.

### A.   Statutory Obligations to Produce Documents

ERISA imposes express obligations on the administrators of employee benefit plans to disclose or produce documents to participants and beneficiaries.  The requirements are, in part, as follows:

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 4

(a) Summary plan description and information to be furnished to participants and beneficiaries

The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant covered under the plan and to each beneficiary who is receiving benefits under the plan–

(1) a summary plan description described in section 1022(a)(1) of this title; and

(2) the information described in sections 1024(b)(3) and 1025(a) and (c) of this title.

29 U.S.C. § 1021(a).  ERISA further requires that

[t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C. § 1024(b)(4).  *See Moran v. AETNA Life Ins. Co.*, 872 F.2d 296, 298 (9th Cir. 1989) (recognizing these duties).

An administrator's failure to timely produce documents properly requested by a participant subjects the administrator to liability for the prescribed statutory penalties.  ERISA provides for such penalties as follows:

Any administrator[...](B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 5

refusal, and the court may in its discretion order such
other relief as it deems proper.

29 U.S.C. § 1132(c)(1).[1]

### B.   Obligations Under the Plan to Produce Documents

The terms of the Plan give Washington and Prudential

different and distinct roles relative to their administrative

duties and their obligations to produce documents.  The Plan's

Summary Plan Description (SPD) designates Washington as the Plan

Administrator, and Prudential as the Claims Administrator.[2]

The Plan makes Washington responsible for producing copies

of the Plan's governing documents.  The SPD provides that upon a

claimant's written request Washington shall produce the

following:

> copies of documents governing the operation of the plan,
> including insurance contracts and collective bargaining
> agreements, and copies of the latest annual report (Form
> 5500 Series) and updated summary plan description.[3]

In contrast, generally speaking Prudential is obligated to

produce documents relative to its handling of a claim for

disability benefits.  The Plan makes Prudential responsible for

administering claims, determining eligibility for benefits, and

---

[1]The statutory penalty has increased to a maximum of $110
per day.  29 C.F.R. § 2575.502c-1.

[2]Pl.'s Statement of Undisputed Facts (SUF), Attachment 1 at
33-34.

[3]*Id.*, Attachment 1 at 37.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 6

considering appeals of its decisions to deny benefits.  The Plan provides that upon a claimant's appeal of a denial of benefits the claimant, upon his or her request, "will also have access to, and the right to obtain copies of, all documents, records and information relevant to your claim free of charge."[4]  Upon Prudential's denial of an appeal, and upon a claimant's subsequent appeals, Prudential is obligated to advise a claimant of his or her entitlement to have access to, and to obtain, free of charge, copies of documents relevant to the claim for benefits.[5]

Based on the above-referenced provisions of the Plan's SPD, the Court finds the Plan imposes obligations on both Washington and Prudential to produce certain documents at the Plaintiff's request.  Therefore, the Court will consider the Plaintiff's motion in light of obligations to produce documents imposed on both administrators.

## C.   Documents Plaintiff Requested

As acknowledged by the Plaintiff in his briefs, the only documents he requested that are the subject of this motion are the following:  (1) the applicable 2002 Plan documents, (2) a letter dated July 26, 2002, from Prudential identifying the

---

[4]*Id.*, Attachment 1 at 35.

[5]*Id.*, Attachment 1 at 35-36.

critical amendment to the Plan changing the eligibility
definition, (3) a document entitled GRP 112747, (4) the form 5500
annual report, and (5) e-mails exchanged between Washington and
Prudential and telephone logs of their communications.

### 1.   2002 Plan Documents and the July 26, 2002 Letter

The Plaintiff made his first request for documents in a
letter dated May 5, 2003, addressed to Prudential.  In that
letter the Plaintiff requested "copies of all documents, records,
and other information relevant" to his claim.[6]

Although the May 5 letter was addressed to Prudential, the
Plaintiff believes Washington should have responded to it.  The
letter was faxed from Toni Barrett at Washington's offices to
Christine Pepe at Prudential's offices.[7]  The facsimile
transmission information printed on the fax indicates the letter
was faxed from "WASHINGTON CORP".[8]  Therefore, the Plaintiff
takes the position that Washington had actual notice of the
letter and was obligated to respond.

Even assuming Washington had actual notice of the
Plaintiff's May 5, 2003 letter, the Court concludes the letter
was not sufficiently addressed to Washington to trigger any

---

[6]Pl.'s SUF, Attachment 7.

[7]Pl.'s SUF ¶ 14.

[8]*Id.*, Attachment 7.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 8

obligation for it to produce documents subject to penalties under 29 U.S.C. § 1132(c)(1) for its failure to do so.  ERISA requires a claimant to submit a written request for documents to an administrator, and the purpose of the requirement is two-fold: It puts the administrator on notice of the information requested and provides evidence that the request was made.  See *Tracey v. Heublein, Inc.*, 772 F.Supp. 726, 728 (D. Conn. 1991).  Although Washington may have been aware of the May 5 letter, it did not put Washington on notice that the Plaintiff was requesting it to produce documents because the letter was neither addressed to, nor directed to Washington.

Furthermore, Prudential's obligation to respond to the May 5 request addressed to it cannot be imputed to Washington.  The Court has no authority to impose statutory penalties against an administrator absent a written request for documents appropriately addressed and directed to that administrator.  *See Wilcott v. Matlack, Inc.,* 64 F.3d 1458, 1461-1462 (10th Cir. 1995).  An administrator could be obligated to respond to a request for documents which is not directed to it, but only when the request is submitted to the administrator's employees or agents whose conduct can be imputed to the administrator.  *See id.* (citing *Boone v. Leavenworth Anesthesia, Inc.*, 20 F.3d 1108, 1109 n.2 (10th Cir. 1994) (a request addressed to company's counsel who "handled the business of the plan" can impose imputed

liability on an administrator for failure to respond) and
*McKinsey v. Sentry Ins.*, 986 F.2d. 401, 404-05 (10th Cir. 1993)
(actions of personnel who routinely respond to requests can be
imputed to a plan administrator)).

The Court finds the limited circumstances that would support
imputing liability to Washington do not exist in this case.  The
Plaintiff has not established that Prudential is Washington's
employee or agent for purposes of triggering Washington's
obligation to respond to the May 5 letter.  Therefore, the Court
concludes Washington is not liable for statutory penalties as a
result of the Plaintiff's May 5 request for documents.

The Court will discuss Prudential's obligation to respond to
the May 5 letter below.  However, an understanding of
Washington's production of certain documents is first required.

The Plaintiff sent a written request for documents addressed
to Washington on March 16, 2004, which incorporated a previous
request he sent to Prudential dated September 23, 2003.[9]  The
September 23 request sought copies of the Plaintiff's "complete
record and file materials", and "copies of all plan documents,
policies and procedures that apply to Prudential's handling of
claims[.]"[10]  On March 30, 2004, Washington responded stating

---

[9]Washington's Statement of Genuine Issues (SGI) ¶ 8, Ex. H.

[10]Pl.'s SUF, Attachment 8.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 10

that a Prudential policy booklet, which the Plaintiff confirms he received on February 13, 2004, was the controlling Plan documents.  Washington's March 30 response also provided the Plaintiff with a copy of a letter dated July 26, 2002 from Prudential to Washington's insurance agent identifying the critical amendment to the Plan affecting the Plaintiff's eligibility for benefits, and which gave rise to the parties' stipulated remand for benefits.[11]  On May 11, 2004, Washington again confirmed that the policy booklet the Plaintiff received, and the amendment to the 2001 Plan identified in the July 26, 2002 letter, were the applicable 2002 Plan documents.[12]

The Court finds that Washington's March 30 response was sufficient and timely.  Although the parties agree Washington did not produce the actual 2002 Plan documents, the record establishes the documents it did produce were, in substance, the 2002 Plan documents.  The policy booklet Plaintiff received in February 2004 was the 2001 Plan document, and the July 26, 2002 letter Washington gave the Plaintiff on March 30, 2004, was the only substantive amendment to the 2001 Plan documents.[13]  The documents Plaintiff received from Washington were substantively

---

[11]Washington's SGI, Ex. I.

[12]*Id.*, Ex. K.

[13]*Id.* ¶¶ 21-24.

identical to the 2002 Plan documents.[14]   The only other
differences between the 2001 and the 2002 Plan documents are
insignificant changes to accommodate the amendment identified in
the July 26, 2002 letter.[15]

Therefore, the Court concludes Washington's March 30
response satisfied the Plaintiff's March 16 request for
applicable Plan documents.  Since Washington responded within 30
days it is not liable for penalties under 29 U.S.C. § 1132(c)(1).

While Washington is not liable for failing to timely respond
to either the Plaintiff's May 5, 2003 letter, or his March 16,
2004 letter, the Court finds Prudential did not timely respond to
the May 5 letter which was addressed to it.  Although Prudential
produced a copy of the Plaintiff's claims file in response to the
letter, it concedes it did not produce a copy of the 2002 Plan
documents, or any other document summarizing the critical
amendment to the 2001 Plan, until May 18, 2004.

As discussed above, however, under the Plan's SPD the
obligation to produce the governing 2002 Plan documents is
imposed on Washington.  Accordingly, the Court concludes
Washington's production of the 2002 Plan documents on March 30,
2004, as described above satisfied Prudential's obligation to

---

[14]*Id.*, Ex. N (Aff. of Bruce Wagner ¶¶ 12.g. and 13.)

[15]*Id.*, Ex. N. (Aff. of Bruce Wagner ¶ 12.a. - e.)

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 12

produce those documents.  Therefore, as Prudential concedes, the Court concludes it should be liable for statutory penalties only for the period of time from May 5, 2003, to March 30, 2004, less the 30-day response time permitted by the statute, for a total of 300 days.

### 2.   GRP 112747 Documents

The Plaintiff further complains that Defendants did not produce a copy of a document identified as "GRP 112747". Specifically, on June 9, 2004, the Plaintiff sent a letter to Prudential requesting that document by name.

As explained by Prudential, the "GRP 112747" label is simply an identification label it has placed on those pages of the Plan documents which contain the amendments to the 2001 Plan.[16]   To simplify its process of amending only portions of the Plan documents, Prudential uses a unique number or code placed in the footer of the pages containing the amended language.[17]   In this case, the pages of the Plan containing the substantive amendment to the 2001 Plan, thereby creating the 2002 Plan, were designated by Prudential as GRP 112747.[18]   As discussed above, the Plaintiff received the substance of the 2002 Plan documents, and thus the

---

[16]Prudential's SGI ¶ 7.

[17]Prudential's SGI, Ex. L (Aff. of Edith Ewing at ¶¶ 2-4.)

[18]*Id.* at ¶ 6.

GRP 112747 documents, as of March 30, 2004.  No further liability for statutory penalties should be imposed on either Defendant for any failure to produce the GRP 112747 documents.

<u>        3.   **Form 5500 Annual Report**</u>

The Plaintiff's June 9, 2004 letter addressed to Prudential also included a request for "pertinent annual reports referred to as the form 5500 series filed by the plan with the U.S. Department of Labor."[19]  Prudential concedes it did not produce a copy of the form to the Plaintiff and, therefore, the Plaintiff requests that the Court impose statutory penalties on it.

The form 5500 annual report is one of the documents identified in 29 U.S.C. § 1024(b)(4) that an administrator is required to produce upon request.  As stated above Washington is the Plan Administrator obligated under the terms of the Plan's SPD to produce the form 5500 annual report.  The Plaintiff requested production of the annual report from Washington on September 20, 2004, and Washington produced the document for Plaintiff on September 28, 2004.[20]

The Plaintiff does not establish how the annual report relates to the adjustment of his claim which would make it Prudential's responsibility to produce.  Again, under the Plan

---

[19]Pl.'s SUF, Attachment 16.

[20]Pl.'s SUF ¶ 29.

Prudential is only obligated to produce documents "relevant to
your claim".  Therefore, the Court finds Prudential should not be
liable for statutory penalties in relation to this document.

### 4.   E-mails and Telephone Call Logs

Finally, the Plaintiff requests that the Court impose
statutory penalties for the Defendants' failure to timely produce
various e-mails between Washington and Prudential, and telephone
call logs documenting telephone conversations between the two
administrators.  The issue raised by the Plaintiff's motion
relative to these items is whether they fall within the category
of documents an administrator is obligated to produce subject to
penalties for its failure to do so.

The Plaintiff takes the position that the e-mails and call
logs fall within the category of documents which the ERISA
regulations (as opposed to the ERISA statutes) require an
administrator to produce and, therefore, Defendants are liable
for statutory penalties for their failure to do so.  The
regulations require the production of a broad range of documents
relevant to a plan beneficiary's claim.  *See e.g.* 29 C.F.R. §
2560.503(h)(2)(iii), (j)(3), and (m)(8).  However, even assuming
the ERISA regulations required the Defendants to produce the e-
mails and call logs, the statutory penalties under 29 U.S.C. §
1132(c)(1) apply only to an administrator's failure to furnish
documents "required by this subchapter" of ERISA, and they do not

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 15

apply to any failure to produce documents described by the regulations. *Brucks v. The Coca Cola Co.*, 391 F. Supp. 2d 1193, 1211-12 (N.D. Ga. 2005).

The Court notes the Plaintiff relies on this Court's decision in *Snow v. Raytheon Co.*, 31 M.F.R. 426 (D. Mont. 2003) as authority for the imposition of sanctions for an administrator's failure to produce documents as required by the ERISA regulations. *See Snow*, at 443 (citing the ERISA regulations). However, the facts of *Snow* do not support the Plaintiff's position. The plaintiff in that case requested "[a] copy of the complete plan description of disability benefits used ... in determining [the plaintiff's] continuing disabled status[,]" and a copy of the "Summary Plan Description and the entire Plan document[.]" *Snow*, 31 M.F.R. at 438. Although the Court imposed sanctions against the administrator for its failure to produce the documents, the only documents at issue in *Snow* were governing plan documents which 29 U.S.C. § 1024(b)(4), *supra*, expressly requires an administrator to produce. *See Hughes*, discussed infra. Therefore, the facts of *Snow* do not support the conclusion that a failure to produce documents as required by ERISA regulations warrants an award of statutory penalties.

To determine whether the e-mails and phone logs fall within the ERISA statutes, the Court must refer to the express language

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 16

of the statute and consider rules of statutory construction.  In
contrast to the ERISA regulations, the ERISA statutes more
narrowly define the types of documents an administrator must
produce subject to penalties if it fails to do so.  "Statutory
construction of ERISA must begin with the language employed by
Congress and the assumption that the ordinary meaning of that
language accurately expresses the legislative purpose." *Hughes
Salaried Retirees Action Committee v. Administrator of the Hughes
Non-Bargaining Retirement Plan*, 72 F.3d 686, 689 (9th Cir. 1995)
(internal quotations and citations omitted).  ERISA requires the
production of only those documents expressly listed in 29 U.S.C.
§ 1024(b)(4), together with "other instruments under which the
plan is established or operated."  The Ninth Circuit has
concluded that "'other instruments under which the plan is
established or operated' is limited to documents that are similar
in nature to the documents specifically listed in [§
1024(b)(4)]."  *Id.*, 72 F.3d at 691.  The documents described in §
1024(b)(4) are limited to those documents "that describe the
terms of the plan, its financial status, and other documents that
restrict or govern the plan's operation[,]" or "documents that
provide individual participants with information about the plan
and benefits."  *Shaver v. Operating Engineers Local 428 Pension
Trust Fund*, 332 F.3d 1198, 1202 (9th Cir. 2003) (quoting *Hughes*,
72 F.3d at 690).

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 17

Since the Plaintiff only argues that the Defendants were required to produce the e-mails and phone logs based on the ERISA regulations, he has not met his summary judgment burden to establish that those items fit within the category of documents identified in 29 U.S.C. § 1024(b)(4) as described above.  E-mails and phone logs reflecting communications between Washington and Prudential cannot be governing plan documents, or documents under which the Plan is established or operated.  Although the Defendants may be required to produce such items pursuant to the ERISA regulations, the Court cannot impose statutory penalties for their failure to produce documents that are not described in § 1024(b)(4).[21]  Therefore, the Plaintiff's motion should be denied with regard to the e-mails and phone logs.

### D.   Statutory Penalty Amount

ERISA provides for an award of a penalty in an amount of up to $110.00 a day for an administrator's failure to timely produce documents.  29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1.  As stated in the text of 29 U.S.C. § 1132(c)(1) the Court has discretion in its assessment of penalties against an administrator.  In exercising its discretion, although the Court may consider the prejudice to the Plaintiff, it can still assess

---

[21]*See Brucks*, 391 F. Supp. 2d at 1212 n.18 (noting there are other consequences for the failure to produce documents described by the ERISA regulations).

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 18

penalties even if the Plaintiff cannot show prejudice. *Draper v. Baker Hughes, Inc.*, 892 F.Supp. 1287, 1298 (E.D. Cal. 1995); *Kaiser Permanente Employees Pension Plan v. Bertozzi*, 849 F.Supp. 692, 702 (N.D. Cal. 1994). The purpose of the penalty is to punish an inept administrator, not to compensate the Plaintiff, so the Court should focus on the conduct of the Defendant in assessing the penalties. *Draper*, at 1298. However, an administrator's good faith, and the lack of prejudice to the plaintiff can be mitigating factors. *Id*.

The Court finds Prudential's conduct in failing to produce the 2002 Plan documents is punishable in light of its associated delay in awarding the Plaintiff his benefits. The Plaintiff received his injuries in February 2002, and he applied for benefits under the Plan in October 2002. Although Prudential initially awarded benefits to the Plaintiff, it discontinued such benefits as of November 1, 2002.[22] The Plaintiff appealed the termination of his benefits, but due to Prudential's refusal to produce Plan documents to him it was not until March 30, 2004, when the Plaintiff first learned of the amendments to the 2001 Plan, and when he first could have learned that Prudential had

---

[22]August 28, 2005 Scheduling Order at 3.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 19

failed to apply those amendments under the 2002 Plan applicable to his claim.[23]

Meanwhile, as early as March 10, 2003, Prudential had been advised it was improperly applying the definitions from the wrong version of the Plan.  The Plaintiff himself also advised Prudential it was applying the wrong version of the Plan.[24]

Having been denied benefits, deprived of access to the applicable 2002 Plan document, and unable to convince Prudential to apply the correct version of the Plan, the Plaintiff was forced to file this lawsuit on April 8, 2005.  It was not until August 17, 2005, when Prudential first admitted it had improperly applied the provisions of the 2001 Plan instead of the 2002 Plan.[25]  Following the remand in this case, and after applying the correct version of the Plan Prudential awarded the Plaintiff back-payments of his benefits.  Therefore, the Court finds Prudential's failure to produce the 2002 Plan is particularly reprehensible in light of its refusal to apply the provisions of the 2002 Plan instead of the 2001 Plan after it had been told to do so for over two years.

---

[23]Pl.'s SUF ¶ 20.

[24]*Id*. ¶¶ 21 and 31.

[25]Prudential's August 17, 2005 Motion to Remand at 4.

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 20

Although Prudential's conduct supports an award of statutory penalties, the Court finds there is some mitigating evidence of its good faith.  As described above, it was Washington's duty under the Plan to produce copies of the applicable Plan documents.  Therefore, Prudential referred the Plaintiff to Washington to obtains copies of the Plan documents, and it relied on Washington to do so.

Based on Prudential's conduct, even taking into consideration the limited mitigating evidence, the Court finds that an award of the full $110 per day penalty in this case is warranted.  Consequently, the Court should impose a statutory penalty against Prudential for the 300-day delay identified above in the amount of $33,000.

### E.   Attorney's Fees, Costs, and Interest

The Plaintiff's motion also requests an award of his attorney's fees and costs in accordance with 29 U.S.C. § 1132(g)(1), and pre-judgment interest on the back-payments of benefits.

With regard to attorney's fees, Prudential concedes it is liable for some fees.  However, it challenges both the hourly rate for the fees requested, and the type of legal work performed.

Although the parties' briefs address numerous issues regarding specific items of attorney's fees the Plaintiff may

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 21

claim, the Plaintiff has not yet submitted his actual claim for attorney's fees.  Absent a review of the actual fees requested the Court cannot assess the reasonableness of the request.  Upon the Plaintiff's submission of affidavits and documentation specifying the actual attorney's fees he incurred and the time his attorney spent on various matters, Prudential may then challenge whether such time is compensable.  Only then will the Court be able to finalize its assessment of the fees to be awarded.

Although the Court does not have before it Plaintiff's actual claim for the specific attorney's fees he requests, the Court can still determine the reasonable hourly rate for the attorney's fees Plaintiff incurred.  Under *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) the Court must apply the "lodestar/multiplier approach" to determine attorney's fees.  This approach is a two-part test in which the Court first determines the lodestar amount "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Id.*  Second, the Court may adjust the loadstar figure up or down using a multiplier based on eleven factors the Court may consider.  *Id.* n.2.

In the instant motion, the Plaintiff and Prudential disagree as to the appropriate hourly rate applicable to the attorney's fees to be awarded.  The Plaintiff suggests a $250.00 hourly rate

FINDINGS AND RECOMMENDATION OF
U.S. MAGISTRATE JUDGE - Page 22

is appropriate based on his counsel's experience, the progression of the case, and an affidavit by attorney Tom Lewis of Great Falls.  Tom Lewis' affidavit indicates a range of $225 - $250 per hour is appropriate.[26]  Prudential, on the other hand, contends the Plaintiff is entitled to $175.00 per hour, based on an affidavit by attorney Robert J. Sterup, of Billings.[27]

Based on the affidavits establishing customary rates in Montana, and the Court's experience with such rates, the Court finds that $200.00 is an appropriate hourly rate for purposes of attorney's fees to be awarded in this case.  However, the remainder of the complete loadstar/multiplier analysis contemplated under *Van Gerwen* cannot be completed until after the Plaintiff submits his attorney's fee claim with supporting documentation, and after the parties have an opportunity to fully brief the issue of attorney's fees.

## F.   Costs

The Plaintiff seeks recovery of his costs incurred in this case.  Prudential does not contest the request.  Accordingly, the Plaintiff should be awarded costs in relation to the suit as appropriate under the Federal Rules of Civil Procedure and 29 U.S.C. § 1132(g).

---

[26]Declaration of Tom Lewis at ¶¶ 3 - 6 (August 2, 2006).

[27]Declaration of Robert J. Sterup ¶¶ 3 - 5 (July 24, 2006).

## G.   Pre-Judgment Interest

The final remaining issue is whether the Plaintiff is entitled to pre-judgment interest on the back-payments of benefits Prudential has paid to him.  Prudential does not dispute that interest should be awarded, but suggests that the rate should be based on statutory law and the applicable market rate under 28 U.S.C. § 1961(a).

Although 28 U.S.C. § 1961(a) expressly applies to post-judgment interest, the Ninth Circuit has held that the market rate it imposes is the applicable pre-judgment interest to be imposed under ERISA.  *Blanton v. Anzalone*, 760 F.2d 989, 992-93 (9th Cir. 1985).  "Prejudgment interest is an element of compensation, not a penalty."  *Dishman v. UNUM Life Ins. Co. of America*, 269 F.3d 974, 988 (9th Cir. 2001).  Therefore, the Court should award interest on the Plaintiff's back-payments of benefits based on the market rate under 28 U.S.C. § 1961(a).

Based on the foregoing, the Court hereby enters the following:

### RECOMMENDATION

The Plaintiff's Motion for Partial Summary Judgment on Count II should be **GRANTED** in part and **DENIED** in part as follows:

1.   The Plaintiff's motion against Washington should be **DENIED**.

2.  The Plaintiff's motion against Prudential should be **GRANTED** as to statutory penalties in the amount of $33,000 for its 300-day delay in producing the 2002 Plan documents.  Furthermore, the Court should award Plaintiff his costs, pre-judgment interest on the back-payments of his benefits, and his attorney's fees at an hourly rate of $200, subject to further consideration pending the Plaintiff's submission of his actual claim for attorney's fees.

3.  The Plaintiff's motion should be **DENIED** in all further respects.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within ten (10) days after receipt hereof, or objection is waived.

DATED this ___5th___ day of December, 2006.

_/s/ Jeremiah C. Lynch_____
Jeremiah C. Lynch
United States Magistrate Judge